**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| ASCENTECH PTY LTD AS TRUSTEE FOR THE SMITH FAMILY TRUST, )<br><br>Plaintiff, )<br><br>v. )<br><br>ASCORA GMBH, )<br><br>Defendant. ) | Case No. 1:19-cv-100 (LMB/IDD) |

**STATEMENT OF INTEREST**
**OF THE UNITED STATES PATENT AND TRADEMARK OFFICE**

In response to the Court's order of September 24, 2019 (Dkt. No. 17), and consistent with

28 U.S.C. § 517, the United States Patent and Trademark Office ("USPTO"), through the

undersigned counsel, hereby respectfully provides this statement of interest and thanks the Court

for the opportunity to express its views on the issues raised in the above-captioned action.

**INTRODUCTION & SUMMARY OF POSITION**

This action involves a dispute, between Plaintiff Ascentech Pty. Ltd. as Trustee for the

Smith Family Trust and Defendant Ascora GmbH (collectively, "the parties"), about whether the

USPTO should register two trademarks: "ASCORA" in standard characters and "ASCORA"

with a design. On October 2, 2013, Plaintiff applied to register the marks for use with various

software-related goods. Defendant initially opposed Plaintiff's applications, asserting prior

common-law rights in the mark and trade name ASCORA for software and related research and

consulting services.

Here, because of settlement, the parties ask this Court not only to vacate the decision of

the Trademark Trial and Appeal Board ("Board") denying Plaintiff's motion to amend its

applications, but to reverse the Board's decision and to direct the USPTO to register Plaintiff's trademarks. But under Supreme Court precedent, a reviewing court should vacate a lower tribunal's decision before the reviewing court decides the merits only in exceptional circumstances—circumstances that do not include the mere settlement of a dispute by the parties. As such, in its current form, the parties' proposed "Final Consent Judgment" (hereinafter, "Proposed Consent Judgment") is insufficient to demonstrate exceptional circumstances.

However, the parties could overcome this hurdle by presenting this Court with proposed findings of fact and conclusions of law to support a reversal of the Board's decision. Thus, the USPTO respectfully requests that this Court direct the parties to submit proposed findings of fact and conclusions of law that more thoroughly set forth the parties' agreement and reasoning for reversing the Board's decision, and that will thereby provide this Court with a complete and proper basis for making its own independent decision as to whether to grant the parties' request.

## BACKGROUND

## I.    LEGAL FRAMEWORK

The owner of a trademark can apply to register it with the USPTO under the Lanham Act. *See* 15 U.S.C. § 1051. After reviewing an application, "[i]f a trademark examiner believes that registration is warranted, the mark is published in the Official Gazette of the [USPTO]." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1300 (2015) (citing 15 U.S.C. § 1062). "At that point, '[a]ny person who believes that he would be damaged by the registration' may 'file an opposition.'" *Id.* (quoting 15 U.S.C. § 1063(a)). Such opposition proceedings occur before the Board and are adversarial. *See* 15 U.S.C. § 1067(a). Like a court, the Board supervises discovery, hears interlocutory and dispositive motions, and conducts a trial, although parties typically present witness testimony through deposition transcripts and also have the option to present testimony in the form of an affidavit or declaration, subject to potential cross-

examination. *See B&B Hardware, Inc.*, 135 S. Ct. at 1300; *see also* 37 C.F.R. § 2.123. Following

briefing and oral argument, if requested, the Board issues a decision adjudging whether the

subject application is entitled to or refused registration. *See* 37 C.F.R. §§ 2.128, 2.129, 2.136.

      A party who is dissatisfied with a decision of the Board has two options for seeking

judicial review. *First*, Section 21(a) of the Lanham Act provides for direct review in the United

States Court of Appeals for the Federal Circuit based on the administrative record that was

before the Board. 15 U.S.C. § 1071(a); *cf. Kappos v. Hyatt*, 132 S. Ct. 1690, 1694 (2012)

(observing, under parallel review provisions of the Patent Act, "the Federal Circuit must review

the PTO's decision on the same administrative record that was before the PTO"). *Second*, as an

alternative to direct review in the Federal Circuit, Section 21(b) of the Lanham Act provides a

unique manner of judicial review by allowing parties to file a civil action in a district court. 15

U.S.C. § 1071(b). In that civil action, a party may introduce new evidence without any

"evidentiary restrictions beyond those already imposed by the Federal Rules of Evidence and the

Federal Rules of Civil Procedure." *Hyatt*, 132 S. Ct. at 1694. Here, Plaintiff chose this latter

alternative for obtaining judicial review of the Board's decision below.

      In a Section 21(b) action, the standard of review that a district court applies depends on

how the parties shape the district court record. If the parties offer evidence that was not before

the USPTO, the district court must make a *de novo* finding on any disputed factual issue on

which new evidence is offered. *See id.* But if no new evidence is submitted, meaning that the

district court record is the same as the administrative record that was before the USPTO, a

district court applies the substantial-evidence standard of review to the Board's factual findings.

*See id.* at 1699-700 (discussing *Morgan v. Daniels*, 153 U.S. 120 (1894)); *see also Fregeau v.*

*Mossinghoff*, 776 F.2d 1034, 1038 (Fed. Cir. 1985), *superseded in part on other grounds by Dickinson v. Zurko*, 527 U.S. 150 (1999).

Section 21(b) provides that a district court reviewing a Board decision "may adjudge [1] that an applicant is entitled to a registration upon the application involved, [2] that a registration involved should be canceled, or [3] such other matter as the issues in the proceeding require, as the facts in the case may appear." 15 U.S.C. § 1071(b)(1). That section further provides that "[s]uch adjudication shall authorize the Director [of the USPTO] to take any necessary action, upon compliance with the requirements of law." *Id.*

## II.   THE PARTIES' PROCEEDINGS BEFORE THE BOARD

An examining attorney at the USPTO examined Plaintiff's applications and found no grounds to preclude registration. In particular, the examining attorney searched the USPTO's database of registered and pending marks and found no conflicting marks that would bar registration of the marks in Plaintiff's applications.[1] Thus, the applications proceeded to the next step in the process, whereby the USPTO published the applications to provide interested parties an opportunity to oppose registration. Defendant then initiated an opposition proceeding, contending that there was a likelihood of confusion between Plaintiff's ASCORA marks in the applications and Defendant's common-law mark and trade name. *See generally Ascora Gmbh v. Ascentech Pty Ltd As Trustee For The Smith Family Trust*, No. 91216243, 2018 WL 6012758 (T.T.A.B. Oct. 26, 2018).

During the opposition proceeding, Plaintiff moved to amend its applications to narrow the scope of the covered goods. Its original applications recited a broad scope of software-related

---

[1] Examining attorneys do not search databases outside the USPTO for conflicting unregistered marks.

goods. Plaintiff sought to narrow its applications to recite "software for managing the operations of a trade or service-based business specifically to assist businesses with the management and operations of a mobile workforce or workers in the field." *Id.* at *6. It contended that the amended goods were narrower than the services with which Defendant used its marks and, thus, would eliminate any likelihood of confusion. Defendant, at that time, opposed Plaintiff's motion to amend the marks, arguing that confusion was likely even under the potentially narrowed scope of goods.

The Board found that the amended goods still overlapped with Defendant's services and ruled that consumer confusion was still likely. *Id.* The Board, therefore, denied Plaintiff's motion to amend. Notably, the Board did not have to consider the broader recitation of goods in Plaintiff's original applications because it had found a likelihood of confusion on the narrower, proposed amended goods. *Id.* at *7-8. Ultimately, the Board sustained Defendant's opposition to registration of Plaintiff's marks.

## III.     THE PARTIES' PROPOSED CONSENT JUDGMENT

On January 28, 2019, Plaintiff commenced this action for review of the Board's decision pursuant to Section 21(b) of the Lanham Act, and sought reversal of the Board's decision. (Dkt. No. 1.) On or about September 23, 2019, the parties reached a settlement. (Dkt. No. 16-1.) They have now filed a joint motion for entry of a final consent judgment, i.e., the Proposed Consent Judgment, which focuses on the Board's denial of Plaintiff's motion to amend. (Dkt. No. 16.)

As relevant here, the Proposed Consent Judgment states that Plaintiff "believes that the Board's Decision . . . is clearly erroneous at least with regard to its denial of [Plaintiff's] motion to amend its applications." (Dkt. No. 16-1, ¶ 5). Apparently, Defendant now agrees that narrowed applications would avoid a likelihood of confusion, as evidenced by the stipulation in the Proposed Consent Judgment that

> [t]he parties hereto acknowledge and agree, based on their business experience
> and knowledge of the marketplace, that if Plaintiff's motions to amend its
> applications are granted, the differences between the goods and services set forth
> in the amended applications and the goods and services offered by Defendant
> under its ASCORA trademark . . . are sufficient to avoid a likelihood of
> confusion.

(*Id.* ¶ 7.) The Proposed Consent Judgment goes on to recite that the Board's decision "should be

*vacated* with respect to the denial of Plaintiff's motion to amend its applications, and that said

motion should be granted, so that Plaintiff's applications may proceed to registration with the

amended identification of goods." (*Id.* ¶ 6 (emphasis added)). On the final page, the Proposed

Consent Judgment concludes by ordering that the Board's decision "is *reversed* as to the denial

of Plaintiff's motion to amend, but is otherwise affirmed." (*Id.* at 3 (emphasis added)). The

Proposed Consent Judgment orders the USPTO to cause Plaintiff's applications to be amended

and to proceed to registration. (*Id.*)

The parties' Proposed Consent Judgment is lacking in several critical respects. It does not

identify any legal or factual error in the Board's decision. It does not include proposed findings

of fact or conclusions of law. It does not explain why it states first that the Board's decision on

the motion to amend is to be "vacated" but states later that the decision is to be "reversed."

Though it states that the Board's decision "is otherwise affirmed," it is unclear what is left to be

affirmed, since the denial of the motion to amend entirely stands on the finding of a likelihood of

confusion. And though the Proposed Consent Judgment does not expressly say so, and though

the USPTO is not privy to the negotiations between the parties, paragraph 7 of the Proposed

Consent Judgment appears to reflect that the parties have entered into what is known as a

"consent to registration," or simply a "consent agreement."

In a "consent agreement," the senior party (here, Defendant) consents to registration of

the mark of the junior party (here, Plaintiff), even after the USPTO has refused registration

because of a likelihood of confusion between the parties' marks. *See generally* Trademark Manual of Examining Procedure ("TMEP") § 1207.01(d)(viii) (Oct. 2018 ed.), *available at* https://tmep.uspto.gov/RDMS/TMEP/current. In accord with Federal Circuit precedent, the USPTO recognizes that "consent agreements" "may, depending on the circumstances, carry great weight" in the likelihood-of-confusion-analysis. *See, e.g.*, *In re Four Seasons Hotel Ltd.*, 987 F.2d 1565, 1566-67 (Fed. Cir. 1993) (internal citations omitted); *see also* TMEP § 1207.01(d)(viii) (advising that the USPTO "should give substantial weight to a *proper* consent agreement" (emphasis added)). In this case, the Proposed Consent Judgment does not provide any details about the putative "consent agreement" referenced in paragraph 7, yet a "consent agreement" potentially would be an important type of new evidence that this Court should consider when reviewing the Board's decision.

## RESPONSE

The parties ask the Court to vacate and reverse the Board's denial of Plaintiff's motion to amend and to order the USPTO to register Plaintiff's trademarks in light of their settlement, which appears to be premised on a "consent agreement" between the parties. However, in its current form, the parties' Proposed Consent Judgment is deficient because it rests exclusively on the mere fact of settlement as grounds for vacating the Board's decision. To avoid this issue, the parties may attempt to demonstrate their entitlement to vacatur of the Board's decision if they provide the Court with appropriate proposed findings of fact and conclusions of law to support a finding of no likelihood of confusion in light of their putative "consent agreement."

## I.   IN GENERAL, MOOTNESS BY REASON OF SETTLEMENT DOES NOT JUSTIFY VACATUR OF JUDGMENT UNDER REVIEW

Because the parties' Proposed Consent Judgment rests exclusively on the mere fact of settlement as grounds for vacating the Board's decision, it is—in its current form—deficient and

should not be entered. The Supreme Court has held that vacatur based simply on settlement is disfavored. *See U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 23-27 (1994). In that case, the certiorari petitioner voluntarily settled the dispute with the respondent while the case was pending before the Supreme Court, and the petitioner moved the Supreme Court to vacate the judgment of the court of appeals. *Id.* at 20. The Supreme Court denied the motion. *Id.* at 29.

As the Supreme Court explained, vacatur of a judgment under review is an "extraordinary" equitable remedy, requiring a finding of exceptional circumstances in light of the public interest. *See id.* at 26, 29. According to the Supreme Court, "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." *Id.* at 27. Thus, a determination whether to vacate a judgment under review when litigation becomes moot "is an equitable one, and exceptional circumstances may conceivably counsel in favor of such a course." *Id.* at 29. The Court cautioned, however, that "[i]t should be clear . . . that those exceptional circumstances do not include the mere fact that the settlement agreement provides for vacatur—which neither diminishes the voluntariness of the abandonment of review nor alters any of the policy considerations" implicated. *Id.*

The Federal Circuit has declined to vacate decisions of the Trademark Trial and Appeal Board under circumstances analogous to those here, invoking *U.S. Bancorp Mortg. Co. See In re Carmine's Broadway Feast Inc.*, 423 F. App'x 981, 981-82 (Fed. Cir. 2011) (declining to vacate the Board's decision and instead remanding the case for the Board to "consider the . . . request for vacatur"); *Midamerican Energy Co. v. Mid-Am. Energy Res., Inc.*, 250 F.3d 754, 2000 WL 727783, at *1 (Fed. Cir. May 19, 2000) (similar). At least one district court has done the same.

*See Glen Raven, Inc. v. Amerinova Props., LLC*, 2014 WL 12493193, at *1 (S.D. Cal. July 29, 2014); *see also* 13C Wright & Miller, *Federal Practice & Procedure* § 3533.10.2 (3d ed.) ("A court should be especially careful about dictating whether to vacate an administrative order mooted by settlement pending review.").

Here, the Board's decision regarding Plaintiff's trademark applications is public and, like other Board decisions, provides guidance to other applicants who may have matters before the Board and the USPTO. *See generally* 2018 WL 6012758. The mere fact that the parties here agreed to settle their dispute after the Board issued its decision does not diminish the value of the Board's decision to the public. Indeed, the Proposed Consent Judgment identifies no error in the Board's decision or changed circumstances on the merits since the Board's decision. It merely cites the parties' private agreement as the exclusive reason for effectively nullifying the litigation as if it had never happened. The reference in paragraph 7 of the Proposed Consent Judgment amounts to no more than a "naked consent," which does not qualify as an additional material fact justifying vacatur of the Board's considered decision. *See Four Seasons Hotel*, 987 F.2d at 1568; TMEP § 1207.01(d)(viii); *see also In re Mastic Inc.*, 829 F.2d 1114, 1117 (Fed. Cir. 1987); *In re Bay State Brewing Co.*, No. 85/826,258, 2016 WL 1045677 (T.T.A.B. Feb. 25, 2016).[2]

---

[2] As explained by the TMEP:

> "Naked" consent agreements (i.e., agreements that contain little more than a prior registrant's consent to registration of an applied-for mark and possibly a mere statement that source confusion is believed to be unlikely) are typically considered to be less persuasive than agreements that detail the particular reasons why the relevant parties believe no likelihood of confusion exists and specify the arrangements undertaken by the parties to avoid confusing the public.

TMEP § 1207.01(d)(viii).

Put simply, the Proposed Consent Judgment currently serves only the *private* interests of the parties, not the *public* interest. But the Board's decision is not "merely the property of private litigants." *See U.S. Bancorp Mortg. Co.*, 513 U.S. at 29. Accordingly, the parties' request for vacatur based solely on their settlement fails to qualify as an exceptional circumstance that would otherwise justify vacating the Board's decision under guidance of *U.S. Bancorp Mortg. Co.*, and the USPTO would object if the Court were to approve the Proposed Consent Judgment in its current form.

Crucially, however, that conclusion does not necessarily foreclose the parties' ability to obtain registration of Plaintiff's trademarks with the narrowed recitation of goods, as will be discussed next.

## II.      IF THE PARTIES PRESENT THE COURT WITH A VALID CONSENT AGREEMENT EXPANDING ON THE SUMMARY REPRESENTATION IN PARAGRAPH 7 OF THE PROPOSED CONSENT JUDGMENT, THEN VACATUR AND REVERSAL COULD BE AVAILABLE AS A REMEDY

Rather than stand on the mere fact of settlement, if the parties were to expand upon their apparent reaching of a "consent agreement," as suggested in paragraph 7 of their Proposed Consent Judgment, that could constitute new evidence that may allow for the availability of vacatur of the Board's decision. In other words, the parties could submit to the Court proposed findings of fact and conclusions of law that provide sufficient detail about the "consent agreement" and that explain how the "consent agreement" changes the likelihood-of-confusion analysis. Then, the USPTO would have no objection *if* this Court were to conduct an independent review of the parties' proposed findings of fact and conclusions of law and *if* this Court subsequently concluded that the Board's decision to deny the motion to amend should be vacated and the Board's likelihood-of-confusion determination should be reversed.

Ideally, those findings and conclusions would spell out what the putative "consent agreement" states, including the parties' reasoning as to why confusion is unlikely; they would address the parties' commitment to addressing any situation where confusion were nevertheless to arise if the proposed narrowed registrations were to issue, *see generally* TMEP § 1207.01(d)(viii); and they would establish that new evidence justifies reversal of the Board's likelihood-of-confusion analysis. This approach would best realize that which Section 21(b) of the Lanham Act empowers this Court to do: to "adjudge . . . that an applicant is entitled to a registration upon the application involved" and to adjudge "such other matter as the issues in the proceeding require, as the facts in the case may appear." 15 U.S.C. § 1071(b)(1). And this approach would avoid the problem of vacating a lower tribunal's decision based merely on settlement and without a treatment of the merits, as discouraged by the Supreme Court in *U.S. Bancorp Mortg. Co.*

## III.   THE ALABAMA DISTRICT COURT'S DECISION IN *HOUNDSTOOTH* DOES NOT APPLY

The parties assert that their Proposed Consent Judgment is modeled on the one at issue in *Board of Trustees of the University of Alabama v. Houndstooth Mafia Enterprises LLC*, 163 F. Supp. 3d 1150 (N.D. Ala. 2016), ostensibly suggesting that the Proposed Consent Judgment may be entered as is. (Dkt. No. 16, at 1.) The USPTO would object to a vacatur of the Board's decision based on that out-of-circuit district-court decision. In short, the *Houndstooth* decision is distinguishable in critical ways from this case.

Most prominently, the *Houndstooth* case involved a motion to *enforce* the consent judgment against the USPTO because the district court there *already had signed the final consent judgment before the USPTO objected*. *See Houndstooth Mafia Enters. LLC*, 163 F. Supp. 3d at 1156. The *Houndstooth* court's finding that the USPTO's challenge to the already-signed vacatur

order was untimely[3] was a significant factor in the court's decision to overrule the USPTO's objection. *See id*.

Moreover, the settlement before the *Houndstooth* court was different from the one here because it was not based on a putative "consent agreement," but occurred simply because the defendant in that case could no longer afford to litigate. *See id*. The *Houndstooth* court did not address any actual change in the circumstances undergirding the Board's decision. Thus, unlike *Houndstooth*, there is potentially new *evidence* that may be placed in the record for this Court to consider in this Section 21(b) action. *See* TMEP § 1207.01(d)(viii); *see also Four Seasons Hotel*, 987 F.2d at 1566-67.

## CONCLUSION

The USPTO thanks the Court for the opportunity to express its views on this matter of great importance to the orderly administration of trademark registration. In short, the USPTO recommends that this Court deny the parties' joint motion for entry of the consent judgment *without prejudice* to their resubmitting a Proposed Consent Judgment that includes or incorporates a consent-to-registration-agreement and is consistent with the principles discussed in the instant memorandum.

//

//

---

[3] The consent judgment in *Houndstooth* was presented to the Board not by the district court and not by stipulation, but by way of a Request to Re-open, Vacate, and Dismiss Without Prejudice, filed by one of the parties. The Board issued its ruling denying the request a year later. *See Bd. of Trs. of the Univ. of Ala. v. Pitts*, 115 U.S.P.Q.2d 1099 (T.T.A.B. 2015).

Dated: October 22, 2019                         Respectfully submitted,

                                                G. ZACHARY TERWILLIGER
                                                UNITED STATES ATTORNEY

                                       *By*: _____/s/_____
                                                ANDREW S. HAN
                                                Assistant United States Attorney
                                                Office of the United States Attorney
                                                Justin W. Williams U.S. Attorney's Building
                                                2100 Jamieson Avenue
                                                Alexandria, Virginia 22314
                                                Tel:    (703) 299-3970
                                                Fax:    (703) 299-3983
                                                Email: andrew.han@usdoj.gov
                                                *Counsel for the United States Patent and*
                                                *Trademark Office*

                                                *Of Counsel:*
                                                Christina J. Hieber
                                                Thomas L. Casagrande
                                                Benjamin T. Hickman
                                                Associate Solicitors
                                                U.S. Patent and Trademark Office